

Frederick P. Corbit
**Frederick P. Corbit**
**Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re:<br><br>REBECCA E. WOLFE,<br><br>        Debtor. | Case No.     22-01075-FPC13<br><br>**FINDINGS OF FACT, CONCLUSIONS OF LAW & ORDER DENYING OBJECTIONS TO DEBTOR'S HOMESTEAD EXEMPTION** |

## INTRODUCTION

Rebecca E. Wolfe is the Debtor in this Chapter 13 Proceeding. In her schedules, Debtor claimed a homestead exemption in proceeds from the sale of the home she owned with her ex-husband John Alex Bies ("Dr. Bies"). Diane Bies,[1] John Bies,[2] and Dr. Bies (together, the "Objecting Parties") have objected to Debtor's claimed homestead exemption. At issue is whether Debtor is entitled to claim, and if so to what extent, a homestead exemption in the sale proceeds. An in-person evidentiary hearing was held on April 13, 2023, during which Debtor and Dr. Bies testified. After hearing the testimony of Debtor and Dr. Bies, the arguments of counsel, and reviewing the evidence presented by the parties, the Court took the matter under advisement.

Based on the record, and the Findings of Fact and Conclusions of Law, as set forth below, the Court denies the objections to Debtor's claimed homestead exemption. In short, Rebecca E. Wolfe's homestead claim is allowed in full.

---

[1] Diane Bies is Dr. Bies' mother and Debtor's ex-mother-in-law.

[2] John Bies is Dr. Bies' father and Debtor's ex-father-in-law.

ORDER DENYING OBJECTIONS - 1

## FINDINGS OF FACT

**The Superior Court Proceedings**

1.      Debtor and Dr. Bies were married on June 21, 2013. (ECF No. 77 at 18-19, 41; *see also* ECF No. 57, Ex. J)[3]

2.      On June 1, 2018, during their marriage, Debtor and Dr. Bies purchased a family home located in Spokane County (the "Real Property").[4] (ECF No. 77 at 19; *see also* ECF Nos. 53 at 1; 59 at 1)

3.      Debtor petitioned for dissolution of her marriage on August 28, 2019, (the "Divorce Proceedings") in the Spokane County Superior Court (the "Superior Court"). (*See* ECF Nos. 77 at 18-19; 71 at Cred. Ex. 3)

4.      In April of 2020, Debtor's parents purchased a house located at 4110 South Martin Street in Spokane Washington, where Debtor and her children currently reside. (ECF Nos. 77 at 43-46; 70 at Dbt. Exs. 1-3)

5.      On August 13, 2020, after initiating, but prior to trial in the Divorce Proceedings, Debtor and Dr. Bies voluntarily sold the Real Property. (ECF Nos. 77 at 19-20, 42-43; 71 at Cred. Ex. 2; *see also* ECF Nos. 53 at 2; 59 at 1)

6.      The sale resulted in $505,807 in net proceeds (the "Sale Proceeds"). (ECF Nos. 77 at 22-23; 71 at Cred. Ex. 1; *see also* ECF Nos. 53 at 3; 59 at 1)

7.      Per the agreement of Dr. Bies and Debtor, on August 14, 2020, the Sale Proceeds were deposited into the escrow account of the Hogan Law Group (the "Closing Agent") until such time the Sale Proceeds could be divided and disbursed in the Divorce Proceedings. (ECF Nos. 77 at 23-24; 71 at Cred. Exs. 1, 5)

8.      On May 10, 2021, a three-day trial commenced in the Divorce Proceedings. (ECF No. 71 at Cred. Ex. 4)

---

[3] All citations to ECF No. 77 are to the Evidentiary Hearing Transcript.

[4] 2415 S. Manito Blvd., Spokane Washington 99203, Spokane County, Parcel 35293.1108.

ORDER DENYING OBJECTIONS - 2

9. On May 27, 2021, the Superior Court made its oral decision and set presentment for June 25, 2021.[5] The Superior Court formalized its oral decision on June 25, 2021, entering its Findings of Fact and Conclusions of Law about a Marriage ("Findings and Conclusions About a Marriage") and Final Divorce Order (Dissolution Decree). (ECF No. 57 at Exs. A, B; *see also* ECF No. 77 at 18)

10. In its Findings and Conclusions About a Marriage, the Superior Court stated:

> Prior to trial, the parties sold their real property. The proceeds from that sale, in the amount of $505,807.18 is held in the escrow account of Hogan Law Group, *pending distribution as a result of this dissolution*.

(ECF No. 57 at Ex. B, emphasis added)

11. The Final Divorce Order divided the Sale Proceeds equally between the Debtor and Dr. Bies, each receiving $252,903.50 as personal property. (ECF No. 77 at 34, 61; *see also* ECF No. 57 at Ex. A)

12. Mr. Dudley, Debtor's attorney in the Divorce Proceedings, signed both the Findings and Conclusions About a Marriage and the Final Divorce Order. However, Ms. Watts, Dr. Bies's attorney, did not sign either document and instead wrote "objected to by written memorandum" on the signature line. (ECF No. 57 at Exs. A and B)

13. That same day, June 25, 2021, counsel for Dr. Bies requested a hearing date "in order to address continuation of the [Wash. Super. Ct. Civ. R.] 62(a) automatic ten-day stay on any judgement prior to, or at the time such judgment stay would expire." The Superior Court denied the stay request. (ECF No. 71 at Cred. Ex. 4)

14. On July 1, 2021, Dr. Bies filed a Notice of Appeal to the Court of Appeals, Division III, followed by the filing of an emergency motion on July 9, 2021, seeking review of the Superior Court's Final Divorce Order and Findings and Conclusions About a Marriage, (ECF No. 71 at Cred. Ex. 4)

15. In his appeal, Dr. Bies sought, amongst other things, to have the Sale Proceeds, which were still being held by the Closing Agent, transferred to the Superior Court as a bond pending appeal, or alternatively that the appellate court

---

[5] The presentment was originally set for June 18, 2021, but was continued at the request of the parties.

remand the matter back to the Superior Court for issuance of a supersedeas bond. (ECF No. 71 at Cred. Ex. 4)

16.     On July 14, 2021, Commissioner Geske of the Court of Appeals, Division III, entered an order declining to enter a stay of the trial court orders and instead remanded the matter back to the Superior Court to "grant the stay and set the amount of the supersedeas bond." (ECF No. 71 at Cred. Ex. 4)

17.     On remand, Dr. Bies argued that that the Superior Court should set the supersedeas bond in the amount of $65,522.63, stay any distribution of any funds to Debtor pending appeal, and that the remaining balance of $187,380.87, nearly 74% of the total amount awarded by the Superior Court, should be distributed to Dr. Bies within ten days. Debtor argued that the bond should be in the amount of $505,807.18 and that neither party should receive any distribution of funds pending appeal. (ECF No. 71 at Cred. Ex. 4)

18.     On August 31, 2021, the Superior Court entered an order setting the supersedeas bond in the amount of $505,807.18. The order directed the Closing Agent to, within seven days, deposit the $505,807.18 with the Clerk of Spokane County Superior Court, where the funds were to be held until further order of the Superior Court. Pursuant to the August 31, 2021, order, the Closing Agent deposited the Sale Proceeds into the Spokane Country Superior Court's registry. (ECF No. 71 at Cred. Ex. 4)

19.     On September 22, 2021, Diane Bies filed suit in the Washington County Superior Court against Dr. Bies and Debtor for money owed (the "Garnishment Proceedings"). (ECF No. 57 at Ex. G)

20.     A portion of the Sale Proceeds became subject to a writ of garnishment on November 2, 2022, following a judgment in favor of Diane Bies. (Case No. 21202701-32) On November 7, 2022, the Superior Court issued a check to Diane Bies in the amount of $194,367.63. (ECF Nos. 57 at Ex. H; 59)

21.     The balance of the Sale Proceeds remains in the Spokane County Superior Court's registry. (ECF No. 77 at 7-12)

22.     On April 8, 2022, Dr. Bies filed his opening brief in the Court of Appeals, Division III, regarding the Divorce Proceedings. In his brief, Dr. Bies claimed that the Superior Court erred when it declined to characterize and distribute the assets/liabilities, including the Sale Proceeds. In her response brief, filed on August 16, 2022, Debtor agreed that the Superior Court failed to characterize and distribute the assets and liabilities. (ECF Nos. 53 at 4; 57 at Ex. F)

ORDER DENYING OBJECTIONS - 4

**The Bankruptcy Court Proceedings**

23.     Debtor filed for bankruptcy under Chapter 13 on November 16, 2022, in the Eastern District of Washington. Her bankruptcy schedules and chapter 13 plan were timely filed.[6] (ECF Nos. 1-2)

24.     Debtor elected state and federal nonbankruptcy exemptions pursuant to 11 U.S.C. § 522(b)(3). (ECF No. 1)

25.     Debtor claimed a $252,903.50 homestead exemption in the Sale Proceeds pursuant to RCW 6.13.010; 020; 030; 070. Next to this claimed exemption, Debtor explained:

> The Clerk of the Court is holding proceeds from sale of homestead real property located at 2415 S. Manito Blvd., Spokane WA 99203, held pursuant to court order. Approximately $505, 807. All funds held are proceeds of sale of homestead property.

(ECF No. 20 at Schedule C)

26.     Per the Washington center for real estate research, the median sale price of a single-family home in Spokane County in 2021 was $390,200.[7]

27.     Debtor's schedules list Diane Bies as holder of a $97,184 nonpriority unsecured claim arising from a loan and John Bies as holder of a $60,405 nonpriority unsecured claim also arising from a loan. Debtor did not list Dr. Bies as a creditor. (ECF No. 1 at Schedule E/F)

28.     John Bies, Diane Bies, and Dr. Bies have all filed proof of claims in this bankruptcy proceeding. On December 23, 2022, John Bies filed Proof of Claim 2-1, an unsecured nonpriority claim in the amount of $124,041.55. (POC 2-1) On January 23, 2023, Diane Bies filed Proof of Claim 4-1, an unsecured nonpriority claim in the amount of $0. Under basis for claim, Diane Bies noted, "Judgment satisfied prior to the bankruptcy." (POC 4-1) Finally, on January 25, 2023, Dr. Bies filed Proof of Claim 6-1, an unsecured priority claim in the amount of "unknown." Dr. Bies's claim included allegations that the Superior Court

---

[6] Pursuant to 11 U.S.C. § 547, the timing of the writ of garnishment on the judgment in favor of Diane Bies raises a potential preferential transfer claim; however, that potential claim is not currently before this Court.

[7] Median Home Prices, State of Washington and Counties, Annual, 2015-2022, https://wcrer.be.uw.edu/wp-content/uploads/sites/60/2023/03/HMR-4Q2022-annual-medians.pdf.

awarded Debtor a disproportionate amount of the net marital assets, erroneously awarded Dr. Bies's separate property to Debtor, and wrongly assigned community debt. (POC 6-1)

29.     Two objections to confirmation of Debtor's chapter 13 plan were filed. The first, by Dr. Bies on December 5, 2022. The second, by John Bies on December 23, 2022. Debtor responded to the objections and the matter was set for hearing. (ECF Nos. 17-18; 26-27; 30-32)

30.     On January 11, 2023, a hearing on the objections was held. Julie C. Watts and Christell Casey, attorneys for Dr. Bies; Douglas R. Dick, attorney for Diane Bies; Aaron Dunham, attorney for John Bies; Robert C. Hahn, III, attorney for Debtor; and Mike Todd, attorney for the trustee, were all in attendance. (ECF Nos. 34-35)

31.     Due to the complexity and breadth of counsels' arguments, the Court determined that several preliminary issues related to exemptions required resolution before the matter of confirmation could be addressed. After discussion, Counsel agreed that there were five threshold issues before the Court, and that resolution of these issues should proceed as a contested matter, pursuant to Fed. R. Bankr. P. 9014. Accordingly, an evidentiary hearing was as set for Thursday, April 13, 2023.[8] (ECF Nos. 21; 34-35; 52)

32.     On January 13, 2023, the Court issued a scheduling order outlining the five preliminary issues requiring resolution. Each of the parties timely filed their respective briefs and supporting documents as well as their proposed witness and exhibit lists.[9] (ECF Nos. 36; 53-57; 59-63; 70-71)

33.     Other than from the Objecting Parties, no objections were filed to Debtor's claimed exemptions.

**The Evidentiary Hearing**

34.     On April 13, 2023, at 10:45 a.m., the evidentiary hearing commenced. In attendance were: Debtor and her counsel Rob Hahn and Tim Durkop; Dr. Bies, and his counsel Julie C. Watts; John Bies and his counsel Aaron Dunham; Diane Bies, and her counsel Douglas R. Dick; and Mike Todd, attorney for trustee.

---

[8] The evidentiary hearing was originally scheduled for April 6, 2023, but, at the request of Debtor, was continued and rescheduled for April 13, 2023. (ECF Nos. 21 and 52)

[9] The Objecting Parties filed combined witness and exhibit lists. (ECF No. 71)

ORDER DENYING OBJECTIONS - 6

35.    Debtor's exhibits 1 through 4 were offered and admitted as were the Objecting Parties' exhibits 1 through 8. (ECF Nos. 70 at Dbt. Exs. 1-4; 71 at Cred. Exs. 1-8)

36.    During the evidentiary hearing, the Court heard testimony from Debtor and Dr. Bies. The Court found Debtor's testimony credible. Moreover, the testimony given by Dr. Bies did not conflict with that given by Debtor. (*See* ECF No. 72)

37.    At the outset of the hearing, the parties agreed that two of the five issues, as set forth in the Scheduling Order, were no longer in dispute. As stated in their pre-hearing filings, and confirmed by Mr. Durkop during the evidentiary hearing, Debtor conceded that the Objecting Parties had sufficiently voiced their objections to Debtor's exemption claim within the time allowed by the rules and statutes and acknowledged that Dr. Bies was a party in interest with standing to participate in the proceeding. (ECF No. 77 at 3-4; *see also* ECF No. 59)

38.    Consequently, only three issues remain in dispute: (1) whether receipt, as used in the RCW 6.13.070(3), requires actual or constructive receipt to trigger the one-year reinvestment period under RCW 6.13.070(3); (2) whether Debtor intended in good faith to reinvest the Sale Proceeds in a new homestead; and (3) if Debtor is entitled to claim a homestead exemption in the Sale Proceeds, whether the exemption is set as of the bankruptcy petition date or the date the homestead is sold. (ECF No. 77 at 6, 12)

39.    During opening statements, Mr. Dunham, as lead counsel for the Objecting Parties, acknowledged that the Objecting Parties have the burden of proving, by a preponderance of the evidence, that Debtor is not entitled to claim a homestead exemption the Sale Proceeds. (ECF No. 77 at 6)

*One-Year Reinvestment Requirement*

40.    There is no dispute that the sale of the Real Property was voluntary. (ECF No. 77 at 9)

41.    Both Debtor and the Objecting Parties agree that RCW 6.13.070(3)'s one-year reinvestment period is triggered when the proceeds from the voluntary sale of a homestead are received. At issue, is the meaning of "receipt" as used in the statute.

42.    The Objecting Parties ask this Court to construe "receipt," as used in the statute, as requiring only constructive receipt, arguing that "the statute does not

ORDER DENYING OBJECTIONS - 7

use the terms 'actual receipt' it just says 'receipt'" [sic]; therefore, based on the plain language of the statute, the Court is not required to find that Debtor had physical possession." (ECF No. 77 at 7)

43.     In support of their argument, the Objecting Parties assert that the Closing Agent was authorized to act as agent for Debtor and Dr. Bies for the purposes of receipt. As such, receipt occurred on August 14, 2020, when the Sale Proceeds were transferred to the Closing Agent's escrow account, the same as "if the money had been deposited in their bank account." The Objecting Parties additionally argue that Debtor is not entitled to claim a homestead exemption in the Sale Proceeds because she failed to comply with the statute's one year reinvestment requirement. (ECF No. 7 at 7-8)

44.     During the evidentiary hearing, Dr. Bies testified that the Sale Proceeds were "never in our bank account." When asked if he had the power to invest any of the Sale Proceeds, Dr. Bies only responded with "I don't speculate." Dr. Bies further testified that he was aware that his attorney had asked the Superior Court to retain control over Debtor's share of the Sale Proceeds, in order to prevent Debtor from having them, but had requested the Superior Court nonetheless disperse his half of the Sale Proceeds to him. (ECF Nos. 77 at 12, 34-36; 71 at Cred. Ex. 4)

45.     Conversely, Debtor argues that "receipt," as intended by the legislature, requires both possession and control. Neither of which, Debtor argues, she has ever had over the Sale Proceeds, as they have always been in someone else's trust account. Supporting this argument is Debtor's testimony that, following the Superior Court's final order dividing the Sale Proceeds, she received a check from the Closing Agent for her half, which she deposited into her bank account. However, before the check cleared "a stop payment was issued due to something that [Dr. Bies's] attorney filed." Debtor's assertion, that she has never had possession or control of the Sale Proceeds, is further bolstered by the Superior Court's Findings and Conclusions about a Marriage and Order re Supersedeas Bond. (ECF Nos. 77 at 12, 60; 53; 57 at Ex. B)

46.     Based on the record, including the testimony of Debtor and Dr. Bies, the Court finds that Debtor never exercised possession or control over any portion of the Sale Proceeds.

ORDER DENYING OBJECTIONS - 8

*The Good Faith Requirement*

47.    The Objecting parties essentially make three factual arguments, which they believe substantiate a finding that Debtor did not have a good faith intent to use the Sale Proceeds to purchase a new homestead.

48.    First, the Objecting parties argue that Debtor lacked a good faith intent to reinvest the Sale Proceeds in another homestead. This lack of good faith, the Objecting Parties argue, is evidenced by the fact that Debtor and Dr. Bies had agreed to sell the Real Property, in order to pay off the debts to his parents. Dr. Bies's testimony fails to substantiate this argument as he was unable to articulate whether there had ever been an explicit conversation regarding Debtor's intended use of the Sale Proceeds. Initially he testified that he and Debtor decided to sell the Real Property "because she…her parents weren't interested in buying [the Real Property] and she wasn't going to live there." But, when asked by Mr. Dunham, if he and Debtor ever discussed what they were going to do with Sale Proceeds, Dr. Bies stated: "No. Well I mean…sorry, we had to pay off our debts and like beyond that, no." Nevertheless, the Court finds that, as a result of the Garnishment Proceedings, a portion of the Proceeds was in fact used to pay debt owed to Diane Bies. (ECF Nos. 77 at 7, 20-21; 57 at Ex. G)

49.    The Objecting Parties next argue that Debtor's lack of good faith is evidenced by the fact that Debtor's parents always intended to buy a home for her and that she now currently resides in a house owned by her parents. In support of this argument, Dr. Bies testified that Debtor had informed him that her parents were going to buy her a home to live in. (ECF No. 77 at 20-21)

50.    Debtor's testimony did not conflict with that of Dr. Bies when it came to Debtor's intention to buy a home. When asked by Ms. Watts "So when did you decide that you wanted to use the proceeds to buy a house?" Debtor testified, "It has always been my intent to own a house." Indeed, Debtor admitted that in April of 2020, she engaged a realtor so that her parents could purchase a home for her to live in, that her parents did in fact purchase a house in Spokane Washington, and that she now currently resides in that house. Debtor also disclosed that for many months she did not pay rent to her parents while residing in the home. However, neither of these facts, Debtor argues, are indicative that she lacked good faith to purchase a new homestead with the Sale Proceeds. The Court agrees. The Court finds insufficient facts to support a finding that Debtor lacked a good faith intent to reinvest the Sale Proceeds. Moreover, the Court finds that nothing precludes Debtor from using the Sale Proceeds to purchase the house she is currently living in from her parents. (ECF Nos. 77 at 12, 44-46, 54-57; 70 at Dbt. Exs. 1-3)

ORDER DENYING OBJECTIONS - 9

51.     Finally, the Objecting Parties argue that at any time while the Sale Proceeds were being held by the Closing Agent, Debtor could have requested disbursement of those funds. Dr. Bies testified that Debtor never requested the Superior Court disperse the Sale Proceeds while they were being held by the Closing Agent. He also testified that Debtor had agreed that the Superior Court failed to appropriately characterize and award the Sale Proceeds. Debtor does not dispute this testimony. However, Debtor asserts that any requests for disbursement would have been in vain since the character and award of the Sale Proceeds has continuously been in dispute since the sale of the Real Property. (ECF No. 77 at 24, 60; 71 at Cre. Ex. 4)

52.     As of the date of this decision, Debtor is still without possession or control of the Sale Proceeds.

53.     The Court has determined that Debtor's testimony was credible. The testimony demonstrates Debtor's intention to reinvest the Sale Proceeds into a new homestead once received. Based on the record, there is no indication that Debtor failed to act in good faith.

### *Determination of Homestead Amount*

54.     The Objecting Parties argue that the exemption amount to which Debtor is entitled was set, not on the date she filed for bankruptcy, but as of the date the Real Property was sold. The Objecting Parties agree that RCW 6.13.070(2) provides "that the homestead is determined as of the date of bankruptcy filing." However, they argue that "the statute treats a homestead differently from the proceeds for the sale of a homestead," thus subsection (2) is inapplicable to subsection (3), which provides for proceeds. As such, the Objecting Parties assert that the Court must look to the date of the sale of the home to determine when the proceeds become exempt. (ECF No. 77 at 11)

## **CONCLUSIONS OF LAW**

**Debtor's Right to Claim Exemptions**

1.     Questions regarding the right of a debtor to claim exemptions are questions of law. *In re Arnold*, 252 B.R. 778, 784 (B.A.P. 9th Cir. 2000).

2.     Determining a debtor's intent in claiming a homestead exemption is a question of fact. *In re Arnold*, 252 B.R. at 784. Trial courts are given great

ORDER DENYING OBJECTIONS - 10

deference when factual findings are based on determinations regarding the credibility of witnesses. *In re Jacobson*, 676 F.3d 1193, 1201 (9th Cir. 2012).

3.     Upon filing of a bankruptcy petition, a bankruptcy estate is created, comprised of all the debtor's legal and equitable interest in property as of the commencement of the case. 11 U.S.C. §541. However, certain property may be excluded from the estate through various exemptions. 11 U.S.C. § 522. A debtor in Washington may choose between federal or state exemptions. 11 U.S.C. § 522(b). *See In re Anderson*, 613 B.R. 279, 281 (B.A.P. 9th Cir. 2020), *aff'd,* 988 F.3d 1210 (9th Cir. 2021).

### *The Objecting Parties Bear the Burden of Proof*

4.     Claimed exemptions enjoy the presumption of validity, therefore it is the party challenging the claim who carries the burden of proof. 11 U.S.C. § 522(l); Fed. R. Bankr. P. 4003(c) ("In any hearing under this rule, the objecting party has the burden of proving that the exemptions are not properly claimed."); *In re Shelley*, 184 B.R. 356 (B.A.P. 9th Cir. 1995), *aff'd and adopted,* 109 F.3d 639 (9th Cir. 1997).

5.     While the bankruptcy code and the bankruptcy rules clearly allocate the burden of proof to the objecting party, neither indicates what the appropriate standard of proof is. Nor have the Supreme Court or the Ninth Circuit explicitly defined this burden. However, courts in the Ninth Circuit have generally applied the preponderance of the evidence standard.[10] "Proof by the preponderance of the evidence means that it is sufficient to persuade the finder of fact that the proposition is more likely true than not." *In re Arnold & Baker Farms*, 177 B.R. 648, 654 (B.A.P. 9th Cir. 1994), *aff'd,* 85 F.3d 1415 (9th Cir. 1996).

6.     Under Washington law, the burden of proving a homestead's invalidity is upon the person asserting such invalidity. *In re White's Est.*, 52 Wash. 2d 171, 324 P.2d 262 (1958).

---

[10] Based on the Supreme Court's decision in *Grogan v. Garner*, 498 U.S. 279, 286, 291, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991), the objecting party, in civil cases, need only provide proof sufficient to meet the preponderance of the evidence standard, as opposed to the more stringent clear and convincing evidence standard. *Garner* involved an exception to discharge 11 U.S.C. § 523. In adopting a preponderance of the evidence standard, the Court explained: "Because the preponderance-of-the-evidence standard results in a roughly equal allocation of the risk of error between litigants, we presume that this standard is applicable in civil actions between private litigants unless particularly important individual interests or rights are at stake." *Id.*

ORDER DENYING OBJECTIONS - 11

7.     Debtor filed her voluntary chapter 13 petition on November 16, 2022, thus creating a bankruptcy estate. Debtor sought to exclude the Sale Proceeds from property of the estate by claiming a homestead exemption under the Washington state exemption system. Debtor's claimed homestead exemption is presumptively valid. Thus, under both federal and state law, the Objecting Parties have the burden of proving, by a preponderance of the evidence, that Debtor is not entitled to claimed homestead exemption.

8.     In cases where a debtor elects state law exemptions, the merits of the exemptions are determined by federal law, while the validity, extent, and requisites of the exemptions are controlled by state law. *See In re Gilman*, 887 F.3d 956, 964 (9th Cir. 2018).

**The Washington Homestead Protects Proceeds**

9.     The Washington State Constitution directs the legislature to "protect by law from forced sale a certain portion of the homestead." Wash. Const. art. XIX, § 1; *see City of Seattle v. Long*, 198 Wash. 2d 136, 145, 493 P.3d 94, 100 (2021). The legislature fulfilled this mandate by passing the Washington homestead act in 1895. *Felton v. Citizens Fed. Sav. & Loan Ass'n of Seattle*, 101 Wash. 2d 416, 418, 679 P.2d 928 (1984). The Washington homestead act "implements the policy that each citizen should have a home where family is sheltered and living beyond the reach of financial misfortune and the demands of . . . creditors." *City of Seattle*, 198 Wash. 2d at 145. The Washington homestead act is codified at RCW 6.13.

10.    The legislature has provided that homesteads should be identified and protected by the courts. *City of Seattle*, 198 Wash. 2d at 153. Public policy requires courts to adopt a liberal construction of the law and facts to promote the beneficial purposes of homestead legislation. *See Lien v. Hoffman*, 49 Wash. 2d 642, 649, 306 P.2d 240 (1957).

11.    In Washington, a homestead is automatically created in the debtor's permanent residence from and after the time the property is occupied as a permanent residence by the owner. *City of Seattle*, 198 Wash. 2d at 150; RCW 6.13.040 (the homestead, as described in RCW 6.13.010, is automatic and no declaration of homestead is necessary to acquire those rights); *In re Anderson*, 988 F.3d 1210, 1213 (9th Cir. 2021) Additionally, once the homestead is established, it is presumed to be valid until it is abandoned. RCW 6.13.050.

ORDER DENYING OBJECTIONS - 12

12.     "A homestead right does not run with the land . . . [i]nstead a homestead is a personal right or privilege given by constitutional or statutory provisions. *In re Greene*, 583 F.3d 614, 622 (9th Cir. 2009). Thus, once the right to claim a homestead is acquired, though its form may change, the right continues unless abandoned or pursuant to statute. *See Sweet v. O'Leary*, 88 Wash. App. 199, 944 P.2d 414 (1997) (property owners' homestead exemption was not extinguished when homestead property was voluntarily sold pursuant to deed of trust; rather, property owners' homestead interest was transferred to excess proceeds).

13.     The concept that a homestead exemption may transfer to proceeds was recognized by the Washington Supreme Court over 100 years ago. In *Becher v. Shaw*, decided in 1906, the court held the Washington homestead act, "by implication exempt[s] the proceeds of the sale of the homestead from garnishment for a reasonable time where the homestead claimant intends in good faith to reinvest the proceeds in another homestead." 44 Wash. 166, 169, 87 P. 71, 72 (1906). The court reasoned "that any other construction would in a measure defeat the beneficent purpose the Legislature had in view." *Id*.

14.     Since then, in furtherance of protecting and preserving the homestead, the Washington legislature has amended the homestead statute to explicitly provide for the exemption of proceeds resulting from the voluntary sale of a homestead. RCW 6.13.070(4), previously RCW 6.12.090.[11]

15.     Debtor's homestead right was automatically created upon purchase of the Real Property. Debtor never abandoned that homestead; as such, upon the sale of the Real Property, Debtor's homestead right transferred to the Proceeds.

16.     The Court notes that the matter before it is not one of property division; that is for the state court to handle. The issue before the court is whether, and to what extent, a homestead exemption exists as to the Sale Proceeds.

**Limitations of the Protection of Proceeds**

17.     The exemption in proceeds is not carte blanche. The legislature placed specific limitations on this statutory exemption. *See Lowery v. State*, 21 Wash. App. 2d 1071 (2022).

18.     RCW 6.13.070(3) provides, in relevant part:

---

[11] Recodified by Laws 1987, ch. 442, § 1121.

ORDER DENYING OBJECTIONS - 13

The proceeds of the *voluntary sale* of the homestead in *good faith* for the purpose of acquiring a new homestead . . . up to the amount specified in RCW 6.13.030, shall likewise be exempt for *one year from receipt*, and also such new homestead acquired with such proceeds.

RCW 6.13.070(3) (emphasis added).

19. The above statutory language imposes three requirements for protecting proceeds. First, the sale of the homestead must be voluntary. Second, the claimant must, in good faith, intend to reinvest the proceeds into a new homestead. Third, the claimant must reinvest the proceeds within one year of receipt. The parties do not dispute that the sale of the Real Property was voluntary. Therefore, Debtor has satisfied the first requirement. Thus, the Court's inquiry focuses on whether Debtor has met the second and third requirements.

### *Reinvestment Requirement - Receipt Requires Possession or Control*

20. Like most other states within the Ninth Circuit, Washington's homestead statute contains a reinvestment requirement for proceeds of voluntary sales of homestead property. *See e.g.*, Ariz. Rev. Stat. § 33-1101; Cal. Civ. Proc. Code § 704.720; Haw. Rev. Stat. Ann. § 651-96); Idaho Code § 55-1008; Or. Rev. Stat. § 18.395(2). The Ninth Circuit has consistently held that if applicable state law requires compliance with a pre-condition to maintain exempt status, such compliance must generally be met in order to maintain exempt status. *See In re Smith*, 342 B.R. 801, 806 (B.A.P. 9th Cir. 2006); *see also In re Jacobson*, 676 F.3d 1193, 1199 (9th Cir. 2012) (explaining that the entire state law applicable on the filing date includes any reinvestment requirement for the debtor's share of the homestead sale proceeds).

21. The parties have not cited any controlling case law involving the reinvestment provision of the Washington homestead exemption statute at issue here, nor has this Court found any. Therefore, in order to decide whether the one-year reinvestment period has lapsed, the Court must determine when, if at all, Debtor received the Proceeds.

22. Neither the Bankruptcy Code, nor the Washington homestead statute defines receipt. The Objecting Parties argue that receipt occurred when the Proceeds were transferred into the closing agent's escrow account. Essentially, they ask this Court to read RCW 6.13.070(3) as requiring only constructive receipt of proceeds to trigger the statute's reinvestment requirement. Debtor argues that

ORDER DENYING OBJECTIONS - 14

receipt requires possession and control, neither of which she claims to have had. Thus, resolution of this issue centers on the meaning of the term "receipt" as used in the statute.

23.     "The court's fundamental objective in construing a statute is to ascertain and carry out the legislature's intent." *City of Seattle*, 198 Wash. 2d at 148. Courts determine legislative intent by examining the words of the statute, the reasonableness of proposed constructions, the public policy behind the statute, and its legislative history. *See Howell v. Spokane & Inland Empire Blood Bank*, 114 Wash. 2d 42, 47, 785 P.2d 815, 818 (1990).

24.     The Legislature does not engage in unnecessary or meaningless acts. Every enactment is presumed to a have significant purpose or objective. *John H. Sellen Const. Co. v. State Dep't of Revenue*, 87 Wash. 2d 878, 883, 558 P.2d 1342 (1976).

25.     In 1981, the Washington homestead act provided that "the proceeds of the voluntary sale of the homestead . . . shall likewise be exempt for one year . . .." Formally RCW 6.12.090. In 1987, the legislature amended the provision to provide "the proceeds of the voluntary sale of the homestead . . .  shall likewise be exempt for one year *from receipt* . . .." Formally RCW 6.12.090[12] (emphasis added). The addition of this language was intentional and indicates that the legislature anticipated situations where property may be sold, but a debtor would not be in immediate receipt of the funds. Interpreting receipt to require neither possession or control would contravene the legislature's stated purpose of protecting the homestead.

26.     Courts will give effect to a statute's plain meaning and assume the Legislature means exactly what it says. *Chelan Cnty. v. Nykreim*, 146 Wash. 2d 904, 926, 52 P.3d 1, 11 (2002). A statute's plain meaning is discerned from the ordinary meaning of the language, the context of the statute, related provisions, and the statutory scheme as a whole. *City of Seattle*, 198 Wash. 2d at 148. Terms that are not defined in a statute should be given their ordinary meanings, which may be determined by reference to a dictionary. *State v. Athan*, 160 Wash. 2d 354, 369, 158 P.3d 27, 34 (2007).

27.     Receipt is defined as "[t]he act of receiving something, especially by taking physical possession. Receipt, Black's Law Dictionary (11th ed. 2019). Possession involves the exercise of physical control over property, the right under

---

[12] *See supra* n.8.

which one may exercise control over something to the exclusion of all others. *See* Possession, Act of Possession, Black's Law Dictionary (11th ed. 2019). As defined, to be in receipt of something generally requires the recipient to have possession and the ability to exercise control of such thing. Thus, an interpretation requiring only constructive receipt would conflict with the ordinary meaning of receipt.

28.     In addition to the plain language and history, public policy requires courts to adopt a liberal construction to promote the beneficial purpose of homestead legislation. Reading receipt to require anything less than possession or control would be contrary to Washington's established policy of construing its homestead statute liberally in favor of the debtor.

29.     Consequently, the Court concludes that "receipt," as set forth in RCW 6.13.070(3), requires possession or control, or in other words actual receipt. Based on the record, the Court has determined that Debtor, through no fault of her own, has not had possession of or control over the Proceeds. Consequently, Debtor has yet to be in receipt of the Proceeds. Therefore, as of the date of Debtor's bankruptcy petition, the one-year reinvestment period had not yet run.

### *Reinvestment Requirement - Equitable Tolling Is Justified*

30.     The same conclusion can be reached under the doctrine of equitable tolling.

31.     The homestead laws are to be liberally construed in favor of the debtor to achieve their purpose. *State ex rel. White v. Douglas*, 6 Wash. 2d 356, 107 P.2d 593 (1940).  Thus, the exemption laws extend to sale proceeds for a specified period of time to allow a debtor to reinvest the proceeds in another homestead. *In re Marriott*, 427 B.R. 887, 894 (Bankr. D. Idaho 2010). Implicit in this statutory scheme is the notion that a debtor has a meaningful opportunity to utilize the proceeds in the manner envisioned by the legislature. *Id*. Without such opportunity, unless a debtor receives relief from the reinvestment requirement while he or she is denied access to the funds, the exemption right is frustrated. *Id*.; *see also In re Dudley*, 617 B.R. 149, 155 (Bankr. E.D. Cal. 2020) (citing *In re Jacobson*, 676 F.3d at 1200) (reinvestment requirements prevent the debtor from squandering proceeds for nonexempt purposes).

32.     While Washington's homestead law does not explicitly provide for equitable tolling of the one-year reinvestment period, other courts construing similar reinvestment obligations have equitably tolled the period during which homestead sale proceeds are exempt and may be reinvested. These cases are instructive. *See*

ORDER DENYING OBJECTIONS - 16

*e.g.*, *In re Golden*, 789 F.2d 698 (9th Cir. 1986);[13] *In re Marriott*, 427 B.R. at 894–95;[14] *Matter of Widdershoven*, 452 F. Supp. 503, 505 (N.D. Cal. 1978);[15] *In re Dudley*, 617 B.R. 149, 154 (Bankr. E.D. Cal. 2020);[16] *In re Dinh*, 562 B.R. 122 (Bankr. S.D. Tex. 2016);[17] *In re Bading*, 376 B.R. 143 (Bankr. W.D. Tex. 2007).[18] Each of these decisions recognize the core principle that courts liberally construe

---

[13] In *In re Golden*, 789 F.2d 698 (9th Cir. 1986), the debtor had sold homestead property pre-petition and declared the proceeds exempt under California law but failed to reinvest the proceeds within six months as required under California exemption statutes. After that period expired, the bankruptcy court granted the chapter 7 trustee's motion for turnover of the proceeds. The Ninth Circuit affirmed, citing the California reinvestment requirement, and holding that the debtor had received the proceeds subject to the reinvestment condition; therefore, his failure to comply with the reinvestment provision required under California law resulted in the proceeds losing their exempt status once the reinvestment period lapsed. The court noted that the policy behind requiring reinvestment is to "prevent the debtor from squandering the proceeds for nonexempt purposes. Acceptance of the debtor's position would frustrate the objective of the California homestead exemption and the bankruptcy act itself, which limits exemptions to that provided by state or federal law." *Id.*

[14] Although Idaho's homestead statute, Idaho Code Ann. § 55-1008, did not provide for equitable tolling of one-year period for reinvesting proceeds from sale of homestead, the court in in *In re Marriott,* 427 B.R. 887, 889 (Bankr. D. Idaho 2010), applied such tolling where debtor did not have unrestricted access to proceeds, first because of divorce action, then because of automatic stay, then because trustee's objection to debtor's claim of exemption in sale proceeds was filed; thus, trustee's objection to claimed exemption was overruled.

[15] In *In re Widdershoven*, 452 F. Supp. 503 (N.D. Cal. 1978), the court held that when a debtor filed for bankruptcy, constructive possession of the sale proceeds is given to the trustee until the trustee files his report of exemptions. Because during this time the debtor is unable to access and control the sale proceeds, the time for reinvestment of those proceeds in a new homestead is equitably tolled from the filing of the bankruptcy petition until the trustee filed his exemption report.

[16] In *In re Dudley,* 617 B.R. 149 (Bankr. E.D. Cal. 2020), the issue was whether the six-month period for reinvestment of homestead proceeds could be extended or otherwise tolled once it started to run. Recognizing that California intended a liberal homestead statute and in light of actions taken by the State that reflected a public policy and legislative effort to protect real property interests, generally, and, specifically, to prevent the loss of residential occupancy and ownership rights, the court found, under the facts of the case, the six-month reinvestment period applicable to the homestead proceeds should be equitably tolled.

[17] In *In re Dihn*, 562 B.R. 122, 123 (Bankr. S.D. Tex. 2016), the court found that the homestead sale proceeds had been tied up in litigation and therefore withheld from the claimant. In order to prevent the claimant from being irrevocably deprived of the exemption's benefits, the court equitably tolled the six-month statutory exemption period, explaining that the purpose for which the statute was enacted would be destroyed if the court did not toll the statute during the period of time the proceeds were involved in court litigation.

[18] In *In re Bading,* 376 B.R. 143, 145 (Bankr. W.D. Tex. 2007) a debtor's homestead consisted of two contiguous parcels. A creditor refused to release an improper lien on one parcel, which ultimately compelled the debtor to sell her homestead in consecutive transactions to the same buyer. The debtor sold the first parcel, and when she was eventually able to obtain the release of the improper lien, she sold the second parcel. Had the proceeds reinvestment clock not been tolled as to the proceeds from the sale of the first parcel, the debtor would have lost her exemption while she was attempting to sell the second. The court held that the time under state law within which the debtor was required to reinvest the proceeds of the first sale transaction was tolled until the sale of both parcels could be completed. Specifically, the court held that refusing to toll the running of the reinvestment clock would have deprived the debtor "of her opportunity to enjoy the full benefits of the homestead guaranteed to her under the Texas Constitution." *Id.* at 153.

ORDER DENYING OBJECTIONS - 17

the law and facts to promote the beneficial purposes of the homestead legislation to benefit the debtor and that in certain limited circumstances, equitable tolling is necessary to achieve that purpose.

33.     Since the sale of the homestead, Debtor has never had unrestricted access to or control over the Proceeds; thus, Debtor has had no opportunity to reinvest the funds to purchase a new homestead. For this Court to now conclude that the one-year limitations period for reinvestment under RCW 6.13.070(3) has lapsed would inequitably deprive Debtor of the protections contemplated by Washington law.

34.     Accordingly, construing the exemption laws liberally, the Court concludes that the one-year investment period has been continuously tolled since the Sale Proceeds were generated.

### *The Good Faith Requirement - Traceability of the Proceeds Not Required*

35.     A question of fact exists as to whether Debtor asserted, in the Superior Court Proceedings, that she intended to utilize the Proceeds to pay debt. However, the Court need not decisively determine whether Debtor did in fact make such an assertion; even if made, the statement alone is insufficient to demonstrate lack of good faith.

36.     Washington's homestead act does not contain an explicit requirement that proceeds from the voluntary sale of a homestead be "traceable." *See* RCW 6.13.070. Although some states have chosen to explicitly include a tracing requirement in their homestead statutes, the Washington legislature has not chosen to add such language. *Compare*, A.R.S. § 33-1101(C) (allowing exemption for 18 months in "identifiable cash proceeds"); *In re Foreacre*, 358 B.R. 384, 389 (Bankr. D. Ariz. 2006) (interpreting A.R.S. § 33-1101(C) to require the proceeds be kept in a separate account and not commingled); C.R.S.A. § 38-41-207 (2000) (providing that the proceeds from the sale of the homestead are exempt for up to two years after sale if kept in a separate account and identifiable); and *In re Polimino*, 345 B.R. 708, 711 (10th Cir. BAP (Colo.) 2006) (stating that C.R.S.A. § 38-41-207 exempts proceeds from the sale of the homestead if kept in a separate account).

37.     RCW 6.13.070 does not require that proceeds be traceable or kept in a separate account to maintain exempt status; all that is required is they be received from the voluntary sale of the homestead and reinvested within one-year from the date of such receipt. Thus, because there is no provision prohibiting the comingling of proceeds with other funds, Debtor would be free to utilize the Proceeds to pay

ORDER DENYING OBJECTIONS - 18

her chapter 13 plan, as long as the entire amount she claimed as exempt was reinvested into a homestead within one year of receipt.

### *The Good Faith Requirement - Debtor Need Not Be Inadequately Housed*

38.     The Washington homestead does not require a claimant be "inadequately housed" during the transition period between homesteads. Nor does it preclude a claimant from living with family or renting a home owned by one's family during this period. RCW 6.13.070. An argument to the contrary borders on absurd. As long as the requirements set forth in RCW 6.13.010 and 6.13.070(4) are satisfied, it is of no account whether Debtor intends to purchase from her parents the home in which she is currently living or an entirely different home.

### *The Good Faith Requirement - Equitable Estoppel Does Not Preclude Debtor's Homestead Exemption*

39.     Under the principle of equitable estoppel, a party should be held to a representation made or position assumed where inequitable consequences would otherwise result to another party who has justifiably and in good faith relied thereon. *City of Seattle v. St. John*, 166 Wash. 2d 941, 948, 215 P.3d 194, 198 (2009) (internal quotations omitted). The elements of equitable estoppel are: (1) an admission, statement, or act inconsistent with a claim afterward asserted, (2) action by another in reasonable reliance upon that act, statement or admission, and (3) injury which would result to the relying party if the first party were allowed to contradict or repudiate the prior act, statement or admission. *City of Seattle*, 166 Wash. 2d at 949; *Colonial Imports, Inc. v. Carlton Nw., Inc.*, 121 Wash. 2d 726, 734, 853 P.2d 913, 918 (1993).

40.     "[E]stoppel is not favored and the party asserting estoppel must prove each of its elements by clear, cogent, and convincing evidence." *Colonial Imports, Inc.*, 121 Wash. 2d at 734. The standard of clear, cogent, and convincing evidence requires that the trier of fact be convinced that the fact in issue is highly probable. *Colonial Imports, Inc.*, 121 Wash. 2d at 735 (internal quotations and citations omitted). In other words, the facts relied upon to establish an equitable estoppel must be clear, positive, and unequivocal in their implication. *Colonial Imports, Inc.*, 121 Wash. 2d at 735 (internal quotations and citations omitted).

41.     The Objecting Parties have failed to provide clear and convincing evidence demonstrating each of the three elements as required under the doctrine of equitable estoppel. Therefore, based on the record, the Court concludes that Debtor's lack of action, on its own, is an insufficient basis for equitable estoppel.

ORDER DENYING OBJECTIONS - 19

42.     While equitable estoppel is governed by state law, "federal law governs the application of judicial estoppel in federal court." *Rissetto v. Plumbers & Steamfitters Loc. 343*, 94 F.3d 597, 603 (9th Cir. 1996). Judicial estoppel aims to protect the integrity of the judicial process and therefore "is an equitable doctrine invoked by a court at its discretion." *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990); *Yanez v. United States*, 989 F.2d 323, 326 (9th Cir. 1993). Judicial estoppel is applied to prevent the deliberate manipulation of the courts. *Helfand v. Gerson*, 105 F.3d 530, 536 (9th Cir. 1997).

43.     Courts generally consider three factors when deciding whether to apply the doctrine of judicial estoppel. *New Hampshire v. Maine*, 532 U.S. 742, 121, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001). First, courts determine whether a party's later position [is] clearly inconsistent with its earlier position. *New Hampshire*, 532 U.S. at 743. Second, courts consider whether a litigant successfully persuaded a court to accept one position, so that judicial acceptance of an incompatible position in a subsequent adjudication would create the perception that either the first or the second court was misled. *Id*. Finally, courts take into account whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *Id*. Courts do not interpret these factors as inflexible prerequisites or an exhaustive formula for deciding when to apply judicial estoppel, and they recognize that the specific facts of a particular case may govern application of the doctrine. *Id.* However, the second prong of this test must be met for judicial estoppel to apply. *Interstate Fire & Cas. Co., an Illinois Corp. v. Underwriters at Lloyd's, London*, 139 F.3d 1234, 1239 (9th Cir. 1998), *as amended* (May 13, 1998).

44.     The Objecting Parties have not brought forth evidence demonstrating that Debtor attempted to deliberately mislead or manipulate the courts. The facts of this case do not necessitate judicial estoppel, and therefore, the Court declines to invoke the doctrine.

*The Good Faith Requirement – Debtor's Homestead Was Not Waived*

45.     Waiver is an equitable principle, defined as the voluntary and intentional relinquishment of a known right. *Rhodes v. Gould*, 19 Wash. App. 437, 576 P.2d 914 (1978); *see also Albice v. Premier Mortg. Servs. of Washington, Inc.*, 174 Wash. 2d 560, 569, 276 P.3d 1277, 1282 (2012). The requirements for waiver

ORDER DENYING OBJECTIONS - 20

vary with the circumstances. *Reynolds Metals Co. v. Elec. Smith Const. & Equip. Co.*, 4 Wash. App. 695, 483 P.2d 880 (1971).

46.    Waiver may be either express or implied; an express waiver is governed by its own terms, while implied waiver may be found based on conduct conclusively establishing intent to waive a right. *Matter of Est. of Petelle*, 195 Wash. 2d 661, 665, 462 P.3d 848, 850 (2020). A party may waive their rights by delaying in asserting or failing to assert an otherwise available adequate remedy. *Albice*, 174 Wash. 2d at 569.

47.    Washington courts have determined that the homestead may be waived. *Matter of Estate of Petelle*, 195 Wash. 2d at 668 ("That the right of homestead may be waived or relinquished, needs no citation of sustaining authority."). However, waiver of the homestead will not be found "absent the most clear and explicit language confirming a voluntary relinquishment of the . . . right." *Id*. at 669.

48.    Debtor's failure to assert her homestead exemption in the Garnishment Proceedings does not constitute "clear and explicit language confirming a voluntary relinquishment" of her homestead right. Thus, Debtor has not waived her right to a homestead exemption in her bankruptcy proceeding.

49.    Even if the Court were to determine Debtor waived her homestead by failing to assert the right during the Garnishment Proceedings, such waiver is prohibited under the bankruptcy code. 11 U.S.C. § 522(e) protects a debtor's exemptions, either Federal or State, by making unenforceable in a bankruptcy case a waiver of exemptions. Subsection (e) provides:

> A waiver of an exemption executed in favor of a creditor that holds an unsecured claim against the debtor is unenforceable in a case under this title with respect to such claim against property that the debtor may exempt under subsection (b) of this section."

11 U.S.C. §522(e).

50.    Hence, even if this Court were to have determined Debtor's conduct in the Garnishment Proceeding constituted waiver, which it did not, such waiver would be enforceable under the bankruptcy code.

**Debtor's Homestead Exemption is Determined on the Petition Date**

51.     Under § 522(b)(3)(A), exemptions are to be determined in accordance with the state law applicable on the date of filing. *In re Jacobson*, 676 F.3d 1193, 1199 (9th Cir. 2012) ("it is the entire state law applicable on the filing date that is determinative of whether an exemption applies").

52.     Under the Washington exemption system, in a bankruptcy case, the debtor's homestead exemption is determined on the date the bankruptcy petition is filed. RCW 6.13.070(2). This comports with the snapshot rule, which holds that exemptions are fixed as of the petition date. *See White v. Stump*, 266 U.S. 310, 313, 45 S. Ct. 103, 69 L. Ed. 301 (1924) (1924; *see also In re Cerchione*, 414 B.R. 540, 548 (B.A.P. 9th Cir. 2009). Consequently, Debtor's right to a homestead exemption is subject to whatever rights and limitations were provided by RCW 6.13 as of August 16, 2022. *See In re Anderson*, 613 B.R. at 282.

53.     Shortly before Debtor filed her bankruptcy petition, the Washington State Legislature enacted significant changes to the Washington homestead statute. One of the most significant changes was to the amount allowed under the exemption. As of the date Debtor filed her bankruptcy petition, RCW 6.13.030 provided, in relevant part:

> (1) The homestead exemption amount is the greater of:
>        (a) $125,000;
>        (b) The county median sale price of a single-family home in
>        the preceding calendar year; . . .
> (2) In determining the county median sale price of a single-family
> home in the preceding year, a court shall use data from the
> Washington center for real estate research or, if the Washington center
> no longer provides the data, a successor entity designated by the office
> of financial management.

RCW 6.13.030.

**The Limitations of 11 U.S.C. § 522(p) Do Not Apply**

54.     11 U.S.C. § 522(p)(1), limits a debtor's ability to take advantage of the state homestead exemptions. The gravamen of § 522(p)(1) is to limit the ability of individuals desiring to take advantage of the lenient exemption provisions of debtor friendly states by relocating to such states. *See In re Greene*, 583 F.3d 614, 618 (9th Cir. 2009).

ORDER DENYING OBJECTIONS - 22

55.     Subsection (p) provides, in relevant part:

[A]s a result of electing under subsection (b)(3)(A) to exempt property under State or local law, a debtor may not exempt any amount of interest that was acquired by the debtor during the 1215-day period preceding the date of the filing of the petition that exceeds in the aggregate $189,050 in value in— . . . real or personal property that the debtor or dependent of the debtor claims as a homestead.

11 U.S.C. §522(p)

56.     "[A]ny amount of interest that was acquired," as used in § 522(p)(1), means the acquisition of ownership of real property. *In re Greene*, 583 F.3d 614, 624 (9th Cir. 2009). Commonly acquisition of ownership occurs on the date of purchase. *See In re Anderson*, 988 F.3d at 1213 ("In other words, if the owner resides on the property as her principal residence, the property is automatically protected by the homestead exemption.").

57.     The monetary cap of § 522(p) is inapplicable to property purchased by a debtor more than 1,215 days before the petition date. *In re Greene*, 583 F.3d 614, 624 (9th Cir. 2009).

58.     It is undisputed that Debtor and her ex-husband, Dr. Bies, purchased the Real Property on June 1, 2018. It is also undisputed that the Real Property constituted their homestead. Finally, it is undisputed that Debtor filed her bankruptcy petition on November 16, 2022. Based on these uncontested facts, Debtor acquired the underlying property interest more than 1215 days before Debtor's bankruptcy filing. Accordingly, Debtor's homestead exemption is not subject to the $189,050 cap set forth in § 522(p).

## **ORDERS**

Based on the foregoing, it is ordered:

1.     The objections to Debtor's claimed homestead exemption, filed by Dr. Bies, Diane Bies, and John Bies are DENIED; and

2.     The full amount of Debtor Rebecca E. Wolfe's homestead exemption claim is ALLOWED.

///END OF ORDER///

ORDER DENYING OBJECTIONS - 23